01

02

03

04

05

06                           UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
07                                      AT SEATTLE

08   TRACY L. BULLENE,                     )     CASE NO. C12-808-MJP-MAT
                                           )
09          Plaintiff,                     )
                                           )
10          v.                             )     REPORT AND RECOMMENDATION
                                           )     RE: SOCIAL SECURITY
11   MICHAEL J. ASTRUE, Commissioner       )     DISABILITY APPEAL
     of Social Security,                   )
12                                         )
            Defendant.                     )
13   _____       )

14          Plaintiff Tracy L. Bullene proceeds through counsel in her appeal of a final decision of

15   the Commissioner of the Social Security Administration (Commissioner).  The Commissioner

16   denied Plaintiff's applications for Supplemental Security Income (SSI) and Disability

17   Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ).  Having

18   considered the ALJ's decision, the administrative record (AR), and all memoranda of record,

19   the Court recommends that this matter be AFFIRMED.

20   / / /

21   / / /

22   / / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01                               **FACTS AND PROCEDURAL HISTORY**

02        Plaintiff was born on XXXX, 1963.[1]   She completed ninth grade and previously

03 worked as a factory worker, housekeeper, and retail assistant.  (AR 159-64.)

04        Plaintiff filed applications for SSI and DIB on May 22, 2008, and May 23, 2008,

05 respectively.   (*See* AR 140-45.)   Those applications were denied initially and on

06 reconsideration, and Plaintiff timely requested a hearing. (AR 78-86.)

07        On August 6, 2010, ALJ Mattie Harvin-Woode held a hearing, taking testimony from

08 Plaintiff, lay witness Robin Lee Anderson, and a vocational expert.  (AR 33-73.)   On

09 November 16, 2010, the ALJ issued a decision finding Plaintiff not disabled.  (AR 10-22.)

10 Plaintiff timely appealed.   The Appeals Council denied Plaintiff's request for review on

11 March 21, 2012 (AR 1-6), making the ALJ's decision the final decision of the Commissioner.

12 Plaintiff appealed this final decision of the Commissioner to this Court.

13                                      **DISCUSSION**

14        The Commissioner follows a five-step sequential evaluation process for determining

15 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

16 must be determined whether the claimant is gainfully employed.  The ALJ found Plaintiff had

17 not engaged in substantial gainful activity since January 1, 2008, the alleged onset date.  (AR

18 12.)  At step two, it must be determined whether a claimant suffers from a severe impairment.

19 The ALJ found Plaintiff's osteoarthritis and chronic low back pain, left shoulder tendonitis,

20

21        [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic

22 Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  bilateral carpal tunnel syndrome, left hip tendonitis, depressive disorder, panic disorder

02  without agoraphobic, personality disorder not otherwise specified, and polysubstance

03  dependence (in remission) to be severe impairments.  (AR 12.)  Step three asks whether a

04  claimant's impairments meet or equal a listed impairment.  The ALJ found that Plaintiff's

05  impairments did not meet or equal the criteria of a listed impairment. (AR 13.)

06      If a claimant's impairments do not meet or equal a listing, the Commissioner must

07  assess residual functional capacity (RFC) and determine at step four whether the claimant has

08  demonstrated an inability to perform past relevant work.  The ALJ found Plaintiff capable of

09  performing light work, with the following exertional limitations: she is limited to frequent

10  postural movements, including balancing bending, climbing, crouching, kneeling, and

11  stooping, and is also limited to frequent handling and fingering.  (AR 15.)  As to mental

12  limitations, the ALJ found that Plaintiff is limited to work involving simple, routine tasks, and

13  can have only "minimal contact with the general public, and only a few co-workers."  (AR

14  15.)

15      With that assessment, the ALJ found Plaintiff capable of performing her past work as

16  a housekeeper.  (AR 20.)  The ALJ continued on to step five to find, in the alternative, that in

17  light of the Medical-Vocational Guidelines and the vocational expert's testimony, Plaintiff

18  was capable of performing other jobs, such as folder.  (AR 21-22.)

19      This Court's review of the ALJ's decision is limited to whether the decision is in

20  accordance with the law and the findings supported by substantial evidence in the record as a

21  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means

22  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

01  reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881

02  F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

03  supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278

04  F.3d 947, 954 (9th Cir. 2002).

05       Plaintiff argues the ALJ's RFC assessment fails to account for all of Plaintiff's

06  physical and mental limitations, and also contends that the ALJ erred in discounting her

07  credibility.

08       **<u>The RFC Assessment</u>**

09       Plaintiff contends that the ALJ erred in evaluating the medical opinions regarding her

10  physical limitations and her mental limitations.

11       In general, more weight should be given to the opinion of a treating physician than to a

12  non-treating physician, and more weight to the opinion of an examining physician than to a

13  non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not

14  contradicted by another physician, a treating or examining physician's opinion may be

15  rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d

16  1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion

17  may not be rejected without "'specific and legitimate reasons' supported by substantial

18  evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499,

19  502 (9th Cir. 1983)).  The ALJ may reject physicians' opinions "by setting out a detailed and

20  thorough summary of the facts and conflicting clinical evidence, stating his interpretation

21  thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing

22  *Magallanes*, 881 F.2d at 751).  Rather than merely stating her conclusions, the ALJ "must set

forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

In evaluating the weight to be given to the opinions of medical providers, Social Security regulations distinguish between "acceptable medical sources" and "other sources." Acceptable medical sources include, for example, licensed physicians and psychologists, while other non-specified medical providers are considered "other sources." 20 C.F.R. §§ 404.1513(a) and (e), 416.913(a) and (e), and Social Security Ruling (SSR) 06-03p.

Less weight may be assigned to the opinions of "other" sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, "[s]ince there is a requirement to consider all relevant evidence in an individual's case record," the ALJ's decision "should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." SSR 06-03p. "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (lay testimony from other sources may be expressly disregarded if the ALJ gives germane reasons for doing so). An ALJ must provide germane reasons for discounting "other source" testimony. *See Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).

**Physical Limitations**

On September 18, 2009, family practitioner Deborah Oksenberg, M.D., examined and

01  evaluated Plaintiff using a DSHS form.  (AR 423-28.)  Though Dr. Oksenberg went on to

02  treat Plaintiff, the evaluation was completed after Plaintiff's first visit.  (AR 426.)  Dr.

03  Oksenberg opined that Plaintiff had "marked" limitations in her ability to sit, stand, walk, lift,

04  handle, and carry, and restricted mobility, agility, or flexibility as to balancing, bending,

05  climbing, crouching, handling, kneeling, pulling, pushing, reaching, sitting and stooping.

06  (AR 425.)  Dr. Oksenberg also opined that Plaintiff could perform sedentary work.  (AR 425.)

07          The ALJ assigned "little weight" to Dr. Oksenberg's opinion:

08          In September 2009, the claimant met with treating physician, Deborah
            Oksenberg, MD for a DSHS physical evaluation, again in connection with the
09          claimant's application for benefits ([AR 423-28]).  Dr. Oksenberg found that
            the claimant had muscle tension and decreased range of motion in her back and
10          shoulders ([AR 424]).  Dr. Oksenberg also found that the claimant had a
            positive Phalen maneuver on her left wrist with decreased grasp on the left side
11          ([AR 424]).  Dr. Oksenberg recommended that the claimant have an EMG test
            to determine if occupational therapy or hand surgery would be needed ([AR
12          424]).  In November 2009, the claimant reported to physical therapy provider
            Kenny Burke, MPT, that she "was doing well and felt that she could continue
13          with strengthening exercises at home" ([AR 450]).  Mr. Burke reported that
            [the] claimant had not called to follow-up with physical therapy since
14          cancelling her last appointment on December 1, 2009 ([AR 450]).  Mr. Burke
            stated that the claimant's short-term goals of having 2/10 pain level or less had
15          been met for activities of daily living, and that she would be formally
            discharged from physical therapy ([AR 450]).  Later, a December 2009 EMG
16          test was normal regarding the claimant's reported left forearm pain ([AR 508]).
            Dr. Oksenberg opined that the claimant's carpal tunnel syndrome, shoulder []
17          sprain, and mid-back pain markedly interfered with the claimant's ability to
            perform several work-related activities, including lift, handle, and carry ([AR
18          425]).  Overall, Dr. Oksenberg opined that the claimant was limited to the
            sedentary level of physical exertion, based on the claimant's shoulder, back,
19          and wrist pain ([AR 425]).  Dr. Oksenberg's opinion, however, is inconsistent
            with the claimant's reported improvement, objective findings in the claimant's
20          routine physical therapy notes, and treatment records, including those signed
            by Dr. Oksenberg ([AR 449-65, 508-12]).  Accordingly, only little weight can
21          be given to Dr. Oksenberg's opinion.

22  (AR 19.)  Plaintiff argues that the ALJ's reasons for discounting Dr. Oksenberg's opinion are

01   not supported by substantial evidence because, contrary to the ALJ's findings, (1) the

02   treatment records do not actually contradict Dr. Oksenberg's opinions, and (2) the entirety of

03   the physical therapy records do not demonstrate significant improvement.

04          Both of these arguments fail.  The treatment records do contain evidence that

05   Plaintiff's limitations were not as severe as described in Dr. Oksenberg's initial evaluation,

06   specifically Plaintiff's normal EMG results in December 2009 (AR 511), and Plaintiff's full

07   range of motion in wrist and fingers without pain and 5/5 grip strength in December 2009

08   (AR 509).  Though it is true that Plaintiff continued to experience wrist tenderness (AR 509)

09   and "significant left forearm pain" that "interfere[ed] with activities" (AR 552), Dr.

10   Oksenberg's notes do not document the severe limitations identified in her evaluation.[2]

11          Particularly because Plaintiff showed improvement with physical therapy in

12   November 2009 (AR 449-50), and failed to pursue therapy for months thereafter (AR 511-

13   12), the ALJ's interpretation of Plaintiff's treatment records is reasonable.  Plaintiff's report

14   of less than 2/10 pain level during activities of daily living 70% of the time, sleep without

15   pain, and improved strength, palpation, and posture (AR 449-50) is substantial evidence to

16   support the ALJ's finding that her condition improved with physical therapy.  Though

17   Plaintiff emphasizes that some pain remained, the ALJ was not unreasonable in finding that

18   Plaintiff's condition improved with physical therapy.  Accordingly, the ALJ did not err in

19   assessing Dr. Oksenberg's evaluation.

20          Plaintiff also argues that the ALJ erred by failing to discuss another DSHS physical

21   _____

22          [2] Dr. Oksenberg's evaluation opinions are also inconsistent with an earlier DSHS evaluation
     completed by Teresa Regier, ARNP, in February 2009.  (AR 471-74.)  Ms. Regier opined that Plaintiff
     could perform light work, with only mild limitation as to lifting, handling, and carrying.  (AR 473.)

01  evaluation, completed by Henry Houghton, M.D., in February 2008.  (AR 236-41.)  Dr.

02  Houghton opined that Plaintiff could perform light work, and that tendonitis and carpal tunnel

03  syndrome caused moderate limitations in her ability to lift, handle, and carry.  (AR 238.)  Dr.

04  Houghton also identified restrictions on Plaintiff's balancing, crouching, handling, kneeling,

05  pulling, and pushing.  (AR 238.)  The Commissioner contends that the ALJ's failure to

06  address this evaluation is harmless error, because Dr. Houghton's evaluation "is consistent

07  with [the ALJ's] [RFC] assessment." (Dkt. 15 at 14.)

08      The Court agrees.  The ALJ accounted for Dr. Houghton's limitations on balancing,

09  crouching, kneeling, and handling by limiting Plaintiff to performing those activities

10  "frequently."  (AR 15.)   Dr. Houghton's lifting, carrying, pushing, and pulling limitations

11  were accommodated in the ALJ's finding that Plaintiff could perform "light work as defined

12  in 20 CFR 404.1567(b) and 416.967(b)": those regulations define light work as "involve[ing]

13  lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing

14  up to 10 pounds."  Furthermore, Dr. Houghton found Plaintiff capable of performing light

15  work despite her limitations, and the ALJ limited Plaintiff to light work and found her capable

16  of performing her past job as a housekeeper, which is classified as light work.  *Compare* AR

17  238 *with* AR 15 & 20.  Accordingly, Dr. Houghton's evaluation is consistent with the ALJ's

18  RFC assessment, and the ALJ's failure to specifically mention Dr. Houghton's evaluation is at

19  most harmless error.

20      **Mental Limitations**

21      Plaintiff assigns error to the ALJ's assessment of multiple medical opinions related to

22  her mental impairments, specifically the opinions of W. Douglas Uhl, Psy.D.; Anselm

01   Parlatore, M.D.; Sylvia Thorpe, Ph.D.; and Ellen Walker Lind, Ph.D.

02        Dr. Uhl

03        Dr. Uhl performed a one-time DSHS evaluation of Plaintiff on February 24, 2008, and

04   opined that Plaintiff could return to work, with some mild and moderate cognitive and social

05   limitations.  (AR 227-35.)  The ALJ assigned "substantial weight" to Dr. Uhl's opinion (AR

06   16-17), but Plaintiff contends that the ALJ did not account for two of the limitations identified

07   by Dr. Uhl: moderate limitations in Plaintiff's ability to relate to supervisors and to tolerate

08   stress.

09        But, as noted by the Commissioner, the state agency medical consultant Anita

10   Peterson, Ph.D., considered those limitations in the Mental Residual Functional Capacity

11   Assessment (MRFCA) — finding Plaintiff to have moderate limitation as to the ability to

12   accept instructions and respond appropriately to criticism from supervisors (AR 311) and

13   moderate limitations as to completing a normal workday and workweek and responding

14   appropriately to changes in work setting (AR 311).  Dr. Peterson nonetheless found that

15   Plaintiff was capable of "perform[ing] work that does not directly involve the general public

16   and a few coworkers.   She is capable of working independently after a period of

17   accom[m]odation."  (AR 312.)  The ALJ was entitled to rely on Dr. Peterson's MRFCA

18   (which was affirmed by Thomas Clifford, Ph.D. (AR 350)), which translated Plaintiff's

19   impairments into workplace restrictions, when crafting the RFC assessment.  *See Stubbs-*

20   *Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

21        Dr. Parlatore

22        Dr. Parlatore, a psychiatrist, evaluated Plaintiff multiple times in connection with her

01 application for DSHS benefits.   (AR 417-22, 429-38, 536-41.)   The ALJ assigned "little

02 weight" to Dr. Parlatore's opinions:

> In September 2009, October 2009, and July 2010, the claimant met with
> psychiatrist, Anselm Parlatore, MD, for psychiatric evaluations, in connection
> with the claimant's continued receipt of benefits through DSHS ([AR 417-22,
> 429-38, 536-41]).   Although Dr. Parlatore met one-on-one with the claimant,
> his opinions in these evaluations are internally inconsistent.   In September
> 2009, Dr. Parlatore found that, with the exception of complex instructions, the
> claimant had no limitations with regard to her cognitive abilities ([AR 420]).
> On the next page, Dr. Parlatore then stated that the claimant had "Global
> deficits" including cognitive problems ([AR 421]).   On the following page, Dr.
> Parlatore then provided the following observations: "Attractive, articulate,
> cogent, coherent, lucid woman" who had been crying and had a "sweet
> demeanor" ([AR 422]).   Despite the claimant's sweet demeanor, Dr. Parlatore
> opined that the claimant had marked to severe limitations in several areas of
> social functioning, including her ability to relate appropriately to co-workers,
> supervisors, public contacts, and the ability to tolerate the pressures and
> expectations of a normal work setting ([AR 420, 539]).   Although Dr. Parlatore
> opined that the claimant had essentially no cognitive limitations on a
> September 2009 DSHS form, he later opined that the claimant was "markedly"
> limited in concentration, persistence, and pace; social functioning, and even in
> her activities of daily living, despite the fact that the claimant goes bike riding,
> camping, and fishing ([AR 430]).   Dr. Parlatore even stated that the claimant
> had experienced "Repeated episodes of decompensation, each of extended
> duration" for both the "paragraph B" criteria and "paragraph C" criteria ([AR
> 430]).   Dr. Parlatore stated that the basis for this opinion was his psychiatric
> evaluation done in September 2009, however, there is no statement,
> observation or allegation that the claimant had ever experienced one episode of
> decompensation, much less "repeated" ones.   Due to the numerous internal
> inconsistencies within Dr. Parlatore's evaluations, only little weight can be
> given to his opinions.

18 (AR 19-20.)   Plaintiff contends that the ALJ erred in finding that Dr. Parlatore's evaluations

19 were internally inconsistent, and that the ALJ failed to provide a specific and legitimate

20 reason to reject Dr. Parlatore's opinions that Plaintiff's social functioning was limited to a

21 marked or severe degree in several areas.   *See* Dkt. 14 at 16-17.

22      The Court disagrees, because the ALJ identified multiple inconsistencies that

01  undermine the accuracy of Dr. Parlatore's opinions.  Internal inconsistencies in a physician's

02  report amount to a specific and legitimate reason to reject a physician's opinion.  *Bayliss v.*

03  *Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  As noted by the Commissioner, the ALJ has

04  discretion to determine whether inconsistencies undermine a physician's opinion.  *See*

05  *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).

06       It was reasonable for the ALJ to interpret Dr. Parlatore's evaluations as internally

07  inconsistent.  In his October 2009 report — which was based on the examination he did

08  before the September 2009 evaluation — he cited evidence for which there is no support in

09  the September 2009 evaluation.  *Compare*  AR 430 (finding repeated episodes of

10  decompensation, each of extended duration in October 2009) *with* AR 417-22 (September

11  2009 evaluation containing no mention of episodes of decompensation).

12       Dr. Parlatore also found in October 2009 that Plaintiff was markedly limited in daily

13  activities and concentration, persistence, and pace.  (AR 430.)  But in September 2009, he

14  found her only moderately limited as to working with complex instructions, and found no

15  cognitive impairments otherwise.  (AR 420.)  Dr. Parlatore reiterated the September 2009

16  findings regarding cognitive impairments again in July 2010 after a second examination.  (AR

17  539.)

18       In October 2009, Dr. Parlatore indicated that Plaintiff experiences "hallucinations,

19  delusions or paranoid thinking" (AR 429), but in September 2009 he stated that she has "[n]o

20  psychosis, hallucinations or delusions" (AR 422).  In July 2010, Dr. Parlatore found that

21  Plaintiff has "[n]o psychosis, hallucinations or delusions."  (AR 541.)

22       Also, in both his September 2009 and July 2010 evaluations, Dr. Parlatore did not

01  support his opinions regarding functionality with specific findings.  The evaluation forms asks

02  the physician to "[d]escribe what the individual is capable of doing despite his/her

03  impairments," but Dr. Parlatore only reiterated a list of her impairments.  *See* AR 421, 539.

04      In light of these inconsistencies between Dr. Parlatore's multiple evaluations and, in

05  some instances, within the same evaluation, the ALJ did not err in discounting Dr. Parlatore's

06  opinions on that basis.

07      <u>Dr. Thorpe</u>

08      Dr. Thorpe performed a one-time psychological evaluation in March 2008 (AR 242-

09  44), and summarized her opinions as follows: "Ms. Bullene's memory functions are well

10  below average to borderline.  She has very poor short-term memory and very poor working

11  memory.   Multitasking is mildly impaired.   In addition it appears that she is clinically

12  depressed and may have traumatic symptoms."  (AR 244.)   Dr. Thorpe also noted that

13  Plaintiff "tends to give up before limits of abilities are reached," but also found that Plaintiff

14  "does try, doesn't complain, and has real limitations."  (AR 243.)  Dr. Thorpe's evaluation

15  does not include an opinion regarding Plaintiff's ability to work, or specific limitations related

16  to work functions.

17      The ALJ assigned "little weight" to Dr. Thorpe's opinions:

18      Dr. Thorpe's findings and opinion [] are inconsistent with the overall record,
        and with the claimant's reported activities, showing only mild cognitive
19      impairment, possible malingering, and activities that require concentration and
        memory, such as reading and crocheting ([AR 165-72, 195-203, 229, 248-49]).
20      Accordingly, only little weight can be given to Dr. Thorpe's opinion.

21

22  (AR 17.)  Plaintiff contends that the ALJ's reasons for discounting Dr. Thorpe's evaluation

01    are not specific and legitimate.

02        The Court disagrees.  At least one[3] of the reasons provided —possible malingering —

03    is specific and legitimate.  It was reasonable for the ALJ to construe Dr. Thorpe's note that

04    Plaintiff "tends to give up before limits of abilities are reached" as a sign of malingering.

05    Though Dr. Thorpe nonetheless concluded that Plaintiff does have "real limitations,"

06    Plaintiff's lack of full effort renders Dr. Thorpe's testing less accurate.  Accordingly, the ALJ

07    appropriately discounted Dr. Thorpe's opinion on that basis.  *See Thomas*, 278 F.3d at 958

08    (holding that the ALJ was entitled to discount a medical opinion where the provider noted that

09    the claimant did not put forth full effort on testing, because the opinion is based on invalid test

10    results).

11    <u>Dr. Lind</u>

12        In July 2008, Dr. Lind performed a one-time psychological evaluation (AR 246-52)

13    and reached the following prognosis:

14        Prognosis for improvement of Ms. Bullene's symptoms is guarded based on
          severity and chronicity.  She has not worked for years at this point and does
15        not seem to have any desire to get her life on track.  She has some reported
          physical concerns but no clear reason for the ongoing pattern of inability in her
16        life.  She was not emotionally prepared to put her best effort into the current
          evaluation, and the results of testing are not valid.  There is some potential for
17        current or recent substance abuse, but Ms. Bullene denies this.  She has very

---

18        [3] The ALJ's other reasons are, arguably, neither specific nor legitimate.  The ALJ's finding
19 that Dr. Thorpe's opinions are inconsistent with the "overall record" is not specific and not necessarily
legitimate; for example, Dr. Uhl also found that Plaintiff had some mild and moderate cognitive
20 limitations.  (AR 220.)  Furthermore, though the ALJ cited evidence that Plaintiff reported reading and
crocheting — activities that undermine Dr. Thorpe's opinions regarding Plaintiff's memory and
concentration impairments — the evidence cited by the ALJ in fact reveals that Plaintiff reports that
21 she can no longer read or crochet as much as she used to due to memory loss and carpal tunnel
syndrome.  (AR 169, 199.)  The ALJ also cites one page of Dr. Uhl's evaluation as corroboration, but
22 that page includes notes that Plaintiff had poor immediate recall, very poor short-term memory, and a
note that "something" is "wrong cognitively."  (AR 229.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01    little connection with others at this point and a long history of dysfunctional
      relationships.  She is not a good candidate for a return to work in the
02    immediate future, but perhaps with ongoing therapy and medication, she will
      be capable of getting her life back on track.

03

04  (AR 248-49.)  Dr. Lind also assigned a Global Assessment of Functioning (GAF) score of 45,

05  indicating serious symptoms.  *See* Diagnostic and Statistical Manual of Mental Disorders 34

06  (4th ed. 2000) (DSM-IV-TR) (GAF of 41 to 50 describes "serious symptoms" or "any serious

07  impairment in social, occupational, or school functioning").

08        The ALJ credited some but not all of Dr. Lind's opinions:

09    Despite the significant possibility that the claimant was malingering, Dr. Lind
      opined that the claimant had a GAF score of only 45, and stated that she was
10    not a good candidate for return to work in the immediate future ([AR 250]).
      Dr. Lind's opinion regarding the claimant's GAF score and ability to work is
11    inconsistent with the claimant's behavior, possible malingering, and
      observations.   Accordingly, substantial weight is given to Dr. Lind's
12    observations and objective findings, however, only little weight can be given to
      Dr. Lind's opinion regarding the claimant[']s GAF score and inability to work.

13

14  (AR 17-18.)   Plaintiff contends that the ALJ erred by construing Dr. Lind's opinion as

15  evidence of malingering, and by discounting Dr. Lind's opinions regarding her GAF score

16  and inability to work.

17        The ALJ's interpretation of Dr. Lind's evaluation opinions is reasonable.  Dr. Lind

18  herself indicated that her testing results were invalid due to Plaintiff's lack of effort (AR 249-

19  50), and thus it was reasonable for the ALJ to discount Dr. Lind's opinions based on invalid

20  testing.  Inaccurate test results can be a specific and legitimate reason to discount Dr. Lind's

21  opinions regarding the severity of Plaintiff's symptoms and her ability to work.  *See Thomas*,

22  278 F.3d at 958 (finding that where a medical report is based on testing that is invalid due to

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

01 inaccurate self-report, the invalidity of that testing is a specific and legitimate reason to

02 discount the medical opinion).

03                    **Plaintiff's Credibility**

04         In assessing credibility, an ALJ must first determine whether a claimant presents

05 "objective medical evidence of an underlying impairment 'which could reasonably be

06 expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d

07 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).

08 Given presentation of such evidence, and absent evidence of malingering, an ALJ must

09 provide clear and convincing reasons to reject a claimant's testimony. *Id.   See also Vertigan*

10 *v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

11         In finding a social security claimant's testimony unreliable, an ALJ must render a

12 credibility determination with sufficiently specific findings, supported by substantial

13 evidence.  "General findings are insufficient; rather, the ALJ must identify what testimony is

14 not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81

15 F.3d 821, 834 (9th Cir. 1996).  "We require the ALJ to build an accurate and logical bridge

16 from the evidence to her conclusions so that we may afford the claimant meaningful review of

17 the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In

18 weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

19 inconsistencies either in his testimony or between his testimony and his conduct, his daily

20 activities, his work record, and testimony from physicians and third parties concerning the

21 nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec.*

22 *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

01          Here, the ALJ provided three reasons to discount Plaintiff's credibility: (1) Plaintiff's

02   poor effort on testing conducted by Dr. Lind and Dr. Thorpe; (2) daily activities inconsistent

03   with total disability; and (3) objective medical evidence inconsistent with Plaintiff's

04   subjective testimony.  Plaintiff challenges the first two reasons.

05          First, Plaintiff's poor effort during evaluations (described in more detail above) —

06   even if it does not constitute malingering — is a clear and convincing reason to discredit

07   Plaintiff.  *See Thomas*, 278 F.3d at 959.  Though Plaintiff argues that her lack of effort

08   resulted from her mental impairments and not from intentional malingering, it was reasonable

09   for the ALJ to construe Plaintiff's self-limiting behaviors as undermining her credibility.  *Id.*

10          Second, Plaintiff's self-reported daily activities are inconsistent with her allegations of

11   disabling impairments.  For example, Plaintiff reported the ability to take care of laundry and

12   preparing simple meals, garden in her boyfriend's greenhouse, use public transportation, ride

13   a bicycle, and take trips with her boyfriend to camp and fish.  (AR 47-49, 52, 167.)  These

14   activities contradict Plaintiff's testimony that her physical and mental limitations prevent her

15   from performing job duties or being around people.  *See, e.g.*, AR 44.  Though the ALJ did

16   not expressly find that Plaintiff's daily activities indicate abilities that transfer to a work

17   setting, multiple medical providers opined that Plaintiff could return to work.  *See, e.g.*, AR

18   229, 238, 473.  Accordingly, Plaintiff's daily activities are a clear and convincing reason to

19   discount her credibility.  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

20          Lastly, the ALJ identified one medical opinion that undermines Plaintiff's subjective

21   testimony (in addition to the medical opinions regarding Plaintiff's poor effort during testing).

22   (AR 16.)  The ALJ noted that Plaintiff stopped her treatment at Whatcom Counseling and

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01 Psychiatric Clinic in October 2008 because she had met her treatment goals. (AR 469-70.) A

02 social worker there assessed Plaintiff with a GAF score of 60 at the time of her discharge,

03 which indicates only moderate symptoms or moderate difficulty in social, occupational, or

04 school functioning.  *See* DSM-IV-TR 34.

05     Accordingly, the ALJ did not err in discounting Plaintiff's credibility because she

06 provided multiple clear and convincing reasons to disbelieve Plaintiff's subjective testimony.

07     **<u>CONCLUSION</u>**

08     For the reasons set forth above, this matter should be AFFIRMED.

09     DATED this <u>18th</u> day of October, 2012.

11     Mary Alice Theiler
     United States Magistrate Judge

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -17